PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3483
_____

CECELIA A. TARANSKY, Individually and on
behalf of all persons similarly situated,
                                                    Appellant

v.

SECRETARY OF THE UNITED STATES DEPARTMENT
OF HEALTH AND HUMAN SERVICES;
UNITED STATES DEPARTMENT OF HEALTH
AND HUMAN SERVICES; UNITED STATES OF
AMERICA
_____

On Appeal from the  United States District Court
for the District of New Jersey
(D.C. No. 1-12-cv-04437)
District Judge:  Honorable Joseph H. Rodriguez
_____

Argued April 8, 2014
Before:  HARDIMAN, SLOVITER
and BARRY, *Circuit Judges*.

(Filed: July 29, 2014 )

Franklin P. Solomon [Argued]
Suite 500
457 Haddonfield Road
Cherry Hill, NJ 08002

Alan H. Sklarsky
Williams Cuker Berezofsky
Suite 101
210 Lake Drive East
Woodland Falls Corporate Park, Suite 101
Cherry Hill, NJ 08002

Joseph A. Venti
Williams, Cuker & Berezofsky
1515 Market Street
Suite 1300
Philadelphia, PA 19102
    *Attorneys for Plaintiff-Appellant*

Daniel Tenny [Argued]
United States Department of Justice
Civil Division
Room 7215
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

Karen D. Stringer
Office of United States Attorney
970 Broad Street
Room 700
Newark, NJ 07102
    *Attorneys for Defendant-Appellees*

———————

OPINION

———————

HARDIMAN, *Circuit Judge*.

This appeal arises under the Medicare as a Secondary Payer Act (MSP Act), 42 U.S.C. § 1395y(b)(2). Appellant Cecelia A. Taransky, a Medicare beneficiary, contends that she is not required to reimburse the Government[1] for conditional medical expenses that it advanced on her behalf. We disagree.

## I

Medicare is a federal entitlement program that provides health insurance benefits to qualified elderly and disabled individuals. *See* 42 U.S.C. § 1395y(b)(2). When first enacted, Medicare paid its beneficiaries' medical expenses, even if beneficiaries could recoup them from other sources, such as private health insurance. *See, e.g.*, *Zinman v. Shalala*, 67 F.3d 841, 843 (9th Cir. 1995).

———————

[1] Appellees in this case are the Secretary of the U.S. Department of Health and Human Services, the U.S. Department of Health and Human Services, and the United States. For ease of reference, we refer to Appellees as the Government.

In 1980, Congress enacted the MSP Act in an effort to reduce escalating costs. As its title suggests, the statute designates Medicare as a "secondary payer" of medical benefits, and thus precludes the program from providing such benefits when a "primary plan" could be expected to pay. 42 U.S.C. § 1395y(b)(2)(A). When the primary plan cannot promptly pay a beneficiary's medical expenses, however, Medicare makes conditional payments to ensure that the beneficiary receives timely care. *Id.* § 1395y(b)(2)(B). Once "the beneficiary gets the health care she needs . . . Medicare is entitled to reimbursement if and when the primary payer pays her." *Cochran v. U.S. Health Care Fin. Admin.*, 291 F.3d 775, 777 (11th Cir. 2002).

This appeal involves, *inter alia*, the interaction of the MSP Act with a state law, the New Jersey Collateral Source Statute (NJCSS), N.J. Stat. Ann. § 2A:15–97. Under the NJCSS, a tort plaintiff cannot recover damages from a defendant when she has already received funding from a different source. The statute provides:

> In any civil action brought for personal injury or death . . . if a plaintiff receives or is entitled to receive benefits for the injuries allegedly incurred from any other source other than a joint tortfeasor, the benefits, other than workers' compensation benefits or the proceeds from a life insurance policy, shall be disclosed to the court and *the amount thereof which duplicates any benefit contained in the award shall be deducted from any award recovered by the plaintiff*, less any premium paid to an insurer directly by the plaintiff or by any member of the plaintiff's family on behalf of the plaintiff for

4

the policy period during which the benefits are
payable.

N.J. Stat. Ann. § 2A:15–97 (emphasis added).

The NJCSS has two purposes. First, it prevents a tort
plaintiff from recovering damages from both a collateral
source of benefits (*i.e.*, a health insurer) and a tortfeasor.
*Parker v. Esposito*, 677 A.2d 1159, 1162 (N.J. Super. Ct.
App. Div. 1996). Second, it aims to shift the burden of
medical costs related to tort injuries, whenever possible, from
liability insurers to health insurers, and thereby keep liability
insurance premiums down. *Lusby v. Hitchner*, 642 A.2d 1055,
1061 (N.J. Super. Ct. App. Div. 1994). In this appeal,
Taransky contends that because the NJCSS barred her from
recovering medical costs from her tortfeasor, it would be
inappropriate for her to reimburse the Government for its
conditional medical payments.

A

Taransky was injured on November 7, 2005, when she
tripped and fell at the Larchmont Shopping Center in Mt.
Laurel, New Jersey. The Medicare program conditionally
paid $18,401.41 for her medical care.

Almost two years later, Taransky filed suit against the
owners and operators of the shopping center (collectively,
Larchmont) in the Superior Court of New Jersey, Burlington
County, seeking damages for bodily injury, disability, pain
and suffering, emotional distress, economic loss, and medical
expenses. Shortly after filing suit, Taransky's lawyer
contacted her designated Medicare contractor repeatedly,
requesting the exact amount of Medicare's claim. In one

letter, counsel complained: "I cannot negotiate the case unless I know the full amount of Medicare's claim." JA at 295. In another, he stated: "I would like to try to resolve Ms. Taransky's claim, but will have difficulty doing so without knowledge of Medicare's lien and its benefit payments in this matter." JA at 307. On several occasions, the Medicare contractor provided Taransky's counsel with information about Medicare's conditional payments, which continued to accumulate as Taransky's lawsuit proceeded.

After two years of litigation, Taransky settled her claims against Larchmont for $90,000. In the settlement agreement, she granted Larchmont a full release of "all past, present and future claims," including for "medical treatment" and for "medical expense benefits" in connection with the accident. JA at 271. The agreement also provided that any liens or subrogation claims would be "satisfied and discharged from the settlement proceeds," and that Taransky would indemnify Larchmont with respect to such claims. *Id.* Relevant to this case, the agreement provided that the indemnified liens "specifically include[], but [are] not limited to, Medicare, Medicaid, workers compensation liens and/or claims." *Id.*

On the heels of the settlement, Taransky filed a motion in the New Jersey Superior Court requesting an order "apportioning the proceeds of the settlement between various elements of damages, but only to the extent necessary to obtain specified documentation relevant to anticipated administrative proceedings with the federal Centers for Medicare and Medicaid Services." JA at 267. Taransky acknowledged that her lawsuit had sought damages for "certain expenses for medical treatment," and that some of her treatment "was paid for through the federal government's

Medicare program." *Id.* In spite of these facts, Taransky argued that the NJCSS precluded tort plaintiffs like herself from recovering losses such as medical expenses that were already paid by another source. Based on that premise, she claimed that her Medicare expenses were not considered in the settlement negotiations and were not included in the settlement amount. JA at 268. Taransky's counsel notified her Medicare contractor of the motion, but did not make the contractor or the Government a party to her state court case. Neither Larchmont nor the Government responded to Taransky's motion.

On November 20, 2009, the Superior Court granted Taransky's motion and entered an order for "good cause shown," stating that the settlement did not include any Medicare expenses: "[N]o portion of the recovery obtained by [Taransky] in this matter is attributable to medical expenses or other benefits compensated by way of a collateral source." JA at 260, 261. The order specified that the settlement amount was "allocated solely to recovery for bodily injury, disability, pain and suffering, emotional distress, and such non-economic and otherwise-uncompensated loss as plaintiff may have suffered." JA at 261.

B

After Taransky settled her case, a Medicare contractor demanded reimbursement of the $10,121.15 that the Medicare program had paid on her behalf.[2] Taransky refused to pay,

---

[2] Medicare's requested reimbursement deducted a proportionate share of Taransky's attorneys' fees and the incidental costs of procuring the settlement.

citing the NJCSS and the allocation order she had received from the Superior Court. She also contended that the Government could not demand reimbursement from a tortfeasor's liability settlement under the MSP Act because a tortfeasor was not a "primary plan" under the meaning of the statute, and that reimbursement would be inequitable because she had not recovered any of her medical expenses.

The Administrative Law Judge (ALJ) found against Taransky on all claims.[3] The ALJ ruled that the Government could be reimbursed from the proceeds of a tort settlement, and refused to recognize the state court's allocation order because it was not made "on the merits." He also rejected Taransky's contention that the NJCSS precluded the Government from reimbursement, reasoning that the NJCSS did not apply to Medicare's conditional payments. Finally, the ALJ found that reimbursement would not be inequitable, as he was unconvinced that the settlement truly did not include damages for medical expenses.

The Medicare Appeals Council affirmed the ALJ's opinion in its entirety, writing separately only to expound on two points. First, it determined that the settlement in fact included damages for Taransky's medical expenses, finding that Taransky's counsel—who repeatedly demanded confirmation of the amount of Medicare's lien—had used

---

[3] Before reaching the ALJ, Taransky appeared before the Medicare Secondary Recovery Contractor (the first level of appeal in the Medicare administrative process) and a Medicare Qualified Independent Contractor (QIC) (the second level of appeal), both of which held her liable for reimbursement.

Medicare's payments as a basis for the settlement. Second, citing *Mason v. Sebelius*, 2012 WL 1019131 (D.N.J. Mar. 23, 2012), the Appeals Council ruled that the NJCSS did not preclude tort victims from obtaining damages for Medicare benefits in tort liability settlements.

On July 16, 2012, Taransky filed suit in the United States District Court for the District of New Jersey, reiterating her claim that she was not responsible for reimbursing the Medicare program from the proceeds of her settlement. As she had argued during the administrative process, Taransky contended that reimbursement was unauthorized by the MSP Act and barred by the NJCSS. She also proffered two new arguments: (1) that Medicare's recovery should be limited to a proportionate share of her settlement that reflected her medical expenses; and (2) that the Government's refusal to acknowledge the Superior Court's allocation order violated her right to due process under the Fifth and Fourteenth Amendments.

The Government moved to dismiss the complaint for lack of jurisdiction and for failure to state a claim, or in the alternative, for summary judgment. The District Court granted the motion, holding that it lacked jurisdiction over Taransky's proportionality and due process claims because she had failed to raise them before the agency. It also determined that the NJCSS did not apply to conditional Medicare benefits, and that the MSP Act authorized reimbursement from the settlement.

This timely appeal followed.

II

The District Court had jurisdiction over Taransky's exhausted claims pursuant to 42 U.S.C. §§ 405(g) and 1395ff(b).[4] We have jurisdiction pursuant to 28 U.S.C. § 1291.

We review the District Court's dismissal order de novo. *See Ballentine v. United States*, 486 F.3d 806, 808 (3d Cir. 2007). Like the District Court, we accept the agency's factual findings if they are supported by substantial evidence in the administrative record. *Mercy Home Health v. Leavitt*, 436 F.3d 370, 377 (3d Cir. 2006); *see* 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229 (1938)). We defer to the agency's legal interpretation of its implementing statute under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *See Leavitt*, 436 F.3d at 377.

III

The reimbursement provision of the MSP Act provides:

> [A] *primary plan*, and an entity that receives payment from a primary plan, shall reimburse

---

[4] As discussed in section IV, *infra*, the District Court correctly held that it lacked jurisdiction over Taransky's proportionality and due process arguments.

the appropriate Trust Fund for any payment
made by the Secretary . . . with respect to an
item or service if it is *demonstrated* that such a
primary plan has or had a *responsibility to make
payment* with respect to such item or service.

42 U.S.C. § 1395y(b)(2)(B)(ii) (emphases added).

Taransky contends that the MSP Act does not
authorize the Government to be reimbursed for conditional
Medicare payments from the proceeds of a tortfeasor's
liability settlement. She advances three primary arguments on
appeal. First, she contends that a tortfeasor cannot be
considered a "primary plan" from which the Government may
receive payment under the MSP Act. Next, she argues that the
Government failed to prove that Larchmont had a
"demonstrated responsibility" to pay her medical expenses, as
the NJCSS prohibited her from obtaining damages for
medical expenses as part of the tort settlement. Finally, she
insists that the Government had to defer to the state court
order apportioning the settlement to exclude medical
expenses. We address each argument in turn.

## A

Taransky claims that a tortfeasor's liability settlement
is not a "primary plan" within the meaning of the MSP Act,
citing only one relevant case: *Mason v. American Tobacco
Co.*, 346 F.3d 36 (2d Cir. 2003). In *Mason*, the Second Circuit
found that an entity could be a primary plan under the MSP
Act only if it had a preexisting obligation to provide health
benefits—for example, via a contract to provide health
insurance. *Id.* at 42. The court ruled that "the trigger for
bringing a MSP claim is not the pendency of a disputed tort

claim, but the *established obligation to pay* medical costs pursuant to a *pre-existing arrangement* to provide insurance benefits." *Id.* at 43 (emphases added) (citation and internal quotation marks omitted). Following *Mason*, Taransky urges us to define "primary plan" to include only health insurance companies who have a preexisting contractual obligation to pay for medical expenses.

Although Taransky's description of *Mason* is accurate, she fails to acknowledge that the case was abrogated by the December 2003 amendments to the MSP Act, which explicitly broadened the definition of "primary plan" to include tortfeasors.[5] *See Bio-Medical Applications of Tenn., Inc. v. Central States Se. & Sw. Areas Health & Welfare Fund*, 656 F.3d 277, 289–90 (6th Cir. 2011) (explaining Congress's intent to foreclose litigation on the definition of "primary plan" via the 2003 amendments). The statute as amended plainly includes tortfeasors and their insurance carriers in its definition of "primary plan":

---

[5] *Mason* interpreted a version of the MSP statute that defined a "primary plan" to include a "self-insured plan," but provided no guidance as to what constituted such a plan. *See* 42 U.S.C. § 1395y(b)(2)(A) (2001), *amended by* Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. No. 108–173 § 301 (2003) (codified as amended at 42 U.S.C. § 1395y(b)(2)(A)). Before the 2003 amendments, courts consistently rejected the Government's argument that tortfeasors were "self-insured plans" because, rather than purchasing liability coverage from a separate insurance carrier, they assumed their own risk of liability. *See, e.g.*, *Thompson v. Goetzmann*, 337 F.3d 489, 495 (5th Cir. 2003); *Mason*, 346 F.3d at 42.

> [T]he term "primary plan" [includes a] . . .
> liability insurance policy or plan (including a
> *self-insured plan*) or no fault insurance . . . . An
> entity that engages in a business, trade, or
> profession shall be deemed to have a self-
> insured plan if it carries its own risk (whether
> by a failure to obtain insurance, or otherwise) in
> whole or in part.

42 U.S.C. § 1395y(b)(2)(A)(ii) (emphasis added). The
tortfeasor in Taransky's case, Larchmont, is "[a]n entity that
engages in a business, trade, or profession," and the record
demonstrates that it had a liability insurance policy.
Accordingly, despite not having a preexisting obligation to
pay for Taransky's medical expenses, Larchmont is a primary
plan from whose payments—the settlement amount—the
Government may obtain reimbursement.[6]

## B

Next, Taransky contends that the Government has
failed to demonstrate, as a condition precedent for

---

[6] In a related argument, Taransky claims that the
Government should not be reimbursed from her tort recovery,
but should pursue a separate claim against Larchmont and its
insurer. This is incorrect, however, because the MSP Act
explicitly allows the Government to recoup payments either
from the "primary plan" or "an entity that receives payment
from a primary plan." 42 U.S.C. § 1395y(b)(2)(B)(ii).
Medicare's "independent right of recovery [from the
beneficiary] is separate and distinct from [its] right of
subrogation." *Zinman*, 67 F.3d at 845.

reimbursement, that Larchmont had a "responsibility to make payment" for her Medicare expenses. 42 U.S.C. § 1395y(b)(2)(B)(ii); *see also Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1309 (11th Cir. 2006) ("[A]n alleged tortfeasor's responsibility for payment of a Medicare beneficiary's medical costs must be demonstrated *before* an MSP private cause of action for failure to reimburse Medicare can correctly be brought.") (emphasis in original).

The MSP Act provides that a beneficiary's reimbursement obligation may be demonstrated by settlement:

> A primary plan's responsibility for such payment may be demonstrated by . . . a payment conditioned upon the recipient's compromise, waiver, or *release (whether or not there is a determination or admission of liability)* of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means.

42 U.S.C. § 1395y(b)(2)(B)(ii) (emphasis added); *see also* 42 C.F.R. § 411.22(b)(2). The Medicare Manual further provides: "Medicare policy requires recovering payments from liability awards or *settlements* . . . without regard to how the settlement agreement stipulates disbursements should be made. That includes situations in which the settlements do not expressly include damages for medical expenses." MSP Manual, Ch. 7, § 50.4.4 (emphasis added).[7]

_____

[7] Policy statements and interpretive rules, such as those included in the MSP Manual, do not have the force of law and

Like the other courts of appeals that have considered the issue, we hold that the fact of settlement alone, if it releases a tortfeasor from claims for medical expenses, is sufficient to demonstrate the beneficiary's obligation to reimburse Medicare. *See Hadden v. United States*, 661 F.3d 298, 302 (6th Cir. 2011); *Mathis v. Leavitt*, 554 F.3d 731, 733 (8th Cir. 2009). For this reason, we adopt the Sixth Circuit's analysis in *Hadden*, which held that "the scope of the plan's 'responsibility' for the beneficiary's medical expenses—and thus of [the beneficiary's] own obligation to reimburse Medicare—is ultimately defined by the scope of *[the beneficiary's] own claim against the third party*" that is later released in settlement. 661 F.3d at 302 (emphasis in original). This rule comports with the text of the MSP Act and the Medicare Manual. It also ensures "a beneficiary cannot tell a third party that it is responsible for all of his medical expenses, on the one hand, and later tell Medicare that the same party was responsible for only [a compromise percentage] of them, on the other." *Id.*

Applying these principles, Taransky's settlement— which released Larchmont from all her claims, including those for medical expenses—renders her liable to the Government. In *Mathis*, the Eighth Circuit found that a beneficiary's obligation under the MSP Act was triggered

---

are not given *Chevron* deference. *See Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000). Those statements do, however, "reflect 'a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'" *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 399 (2008) (quoting *Bragdon v. Abbott*, 524 U.S. 624, 642 (1998)).

even when the parties did not specifically address obligations to Medicare. 554 F.3d at 733. Here, Taransky's settlement agreement expressly anticipated Medicare's lien, and provided that reimbursement to the Medicare program would be "satisfied and discharged from the settlement proceeds." JA at 271. There is also substantial evidence to support the agency's factual finding that the settlement included the costs of Taransky's medical care. Before entering into the settlement agreement, Taransky's counsel repeatedly contacted her Medicare contractor to determine the amount of the program's lien, so he could use the amount to justify her settlement demand. *See, e.g.*, JA at 294 (stating counsel's intent to "negotiate this case using [an estimate of Medicare's benefits] as a basis for potential settlement"); JA at 295 ("I cannot negotiate the case unless I know the full amount of Medicare's claim."). After the settlement, counsel certified that Taransky's lawsuit included "certain expenses for medical treatment," and "[s]ome of the medical treatment for the personal injuries suffered by [Taransky] was paid for through the federal government's Medicare program." JA at 267. Given the substantial evidence that Taransky was compensated for her medical costs, she cannot now hide behind the lump sum settlement to deprive the Government of the reimbursement it is owed.

1

In response, Taransky contends that her settlement amount could not have included her medical costs as a matter of law, as Medicare payments are a "collateral source" of benefits that may not be obtained from a tortfeasor under the NJCSS. It would follow that the MSP Act's reimbursement provision was never triggered, and that the Government's request—rather than preventing her from obtaining a double

recovery—would strip her of any recoupment of her medical expenses.

The New Jersey Supreme Court has not considered whether the NJCSS operates to prevent a plaintiff from recovering Medicare payments in a tort suit; thus, "we must attempt to predict how that tribunal would rule." *U.S. Underwriters Ins. Co. v. Liberty Mut. Ins. Co.*, 80 F.3d 90, 93 (3d Cir. 1996). In doing so, we may consider the decisions of state intermediate appellate courts, which, "[a]lthough not dispositive, . . . should be accorded significant weight in the absence of an indication that the highest state court would rule otherwise." *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1373 n.15 (3d Cir. 1996).

Several decisions by the New Jersey Appellate Division inform our analysis. In *Lusby*, the Appellate Division held that the NJCSS did not bar the plaintiff from recovering his medical expenses as part of tort damages, even though those costs had been provisionally covered by the state Medicaid program. 642 A.2d at 1061. The court rested its decision on the statutory purpose of the NJCSS:

> The legislative determination . . . was apparently not only to prevent plaintiffs from obtaining a double recovery but also . . . to shift the burden, at least to some extent, from the liability and casualty insurance industry to health and disability third-party payers.
>
> We think it plain, however, that neither of these purposes is advanced by application of the collateral source statute where, as here, a plaintiff could not in any case pocket a double

recovery for medical expenses *for the reason that his entire recovery is subject to Medicaid's reimbursement rights*.

*Id.* (emphasis added). The court further emphasized that the NJCSS's purposes were not served "when the ultimate burden is shifted from the tortfeasor's liability carrier to a governmentally-funded secondary payer." *Id.* Since *Lusby*, panels of the Appellate Division have consistently found that application of the NJCSS turns on whether the government benefits provided are reimbursable: if they are, then the payments are considered conditional, and are not collateral benefits that may not be recovered pursuant to the statute. *Compare Thomas v. Toys "R" Us, Inc.*, 660 A.2d 1236, 1246 (N.J. Super. Ct. App. Div. 1995) (finding that Social Security payments are a collateral source of benefits under the NJCSS because the government has no right to their reimbursement), *with Woodger v. Christ Hosp.*, 834 A.2d 1047, 1051 (N.J. Super. Ct. App. Div. 2003) ("We have also held that benefits such as Medicaid, *subject to reimbursement* by the plaintiff to the payer from the proceeds of a negligence judgment or settlement, are similarly not includable as a collateral source because they do not constitute double recovery.") (emphasis added).

While *Lusby* involved a state Medicaid statute,[8] its reasoning applies with equal force in the Medicare context.

_____

[8] Under the state-law provision considered in *Lusby*, any recipient of Medicaid funds who brought a tort action against a third party

shall immediately reimburse the division in full from the proceeds of any settlement, judgment,

The MSP Act makes clear that Congress intended the Medicare program to serve only as a secondary payer: Medicare may pay a beneficiary's medical bills only if a primary plan cannot be expected to pay promptly, and beneficiaries are obligated to reimburse Medicare once a responsible primary plan has been identified. 42 U.S.C. § 1395y(b)(2)(B)(ii); *Fanning v. United States*, 346 F.3d 386, 388–89 (3d Cir. 2003). Medicare's benefits, then, are reimbursable and conditional. For that reason, the NJCSS, which operates only when the beneficiary is "entitled to receive benefits" from another source, N.J. Stat. Ann. § 2A:15–97, is inapplicable.

As further support for this conclusion, the Appellate Division extended *Lusby*'s logic to Medicare payments in

---

> or other recovery in any action or claim initiated against any such third party subject to a pro rata deduction for counsel fees, costs, or other expenses incurred by the recipient or the recipient's attorney.

N.J. Stat. Ann. § 30:4D–7.1(b).

Taransky attempts to distinguish the Medicaid statute at issue in *Lusby* from the MSP Act, contending that Medicaid provided for an unqualified right to reimbursement, while the MSP Act requires the Government to demonstrate responsibility for payment. The *Lusby* court, however, was unconcerned with the unconditional nature of Medicaid's reimbursement provision, and simply considered whether Medicaid's payments were reimbursable. Taransky's distinction is therefore unavailing.

19

*Jackson v. Hudson Ct., LLC*, No. L–415–07, 2010 WL 2090036 (N.J. Super. Ct. App. Div. May 24, 2010).[9] There, in a case similar to Taransky's, the Medicare beneficiary sought an order from the motions judge that no portion of her personal injury settlement was attributable to medical expenses. *Id.* at *1. On appeal, the Appellate Division affirmed the motions judge's denial. Analogizing *Lusby*, the court found that Medicaid liens were "virtually identical to Medicare liens," and that Medicare, as a secondary payer, "ha[d] a nearly unqualified right to reimbursement." *Id.* at *3. Because of this reimbursement right, the claimant, even if she were able to recover medical expenses from another source, "could not pocket them and hence cannot obtain the 'double recovery' that the collateral source statute is designed to avoid." *Id.* We predict that the New Jersey Supreme Court would adopt this sound reasoning when considering the NJCSS's application to Medicare liens.

By contrast, only one case supports Taransky's position: *Early v. Wal-Mart Stores, Inc.*, Civ. No. 01–cv–5531 (D.N.J. July 28, 2003), in which the district court, in an unpublished opinion, ruled that Medicare benefits constituted a collateral source under the NJCSS. *See* JA at 208. There, the court found that the plaintiff had already recovered the cost of the victim's medical treatment from Medicare, and concluded that the NJCSS precluded the plaintiff from obtaining the amount from the tortfeasor. *See* JA at 211.

---

[9] While unpublished opinions are not binding on New Jersey courts, *see Stengart v. Loving Care Agency, Inc.*, 990 A.2d 650, 655 n.4 (N.J. 2010), we may refer to them when predicting state law. *See Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1042 (3d Cir. 1993).

While *Early* is certainly on point, we find the case unpersuasive for two reasons. First, the decision turned on a flawed simplification of New Jersey law: the district court, in predicting how the New Jersey Supreme Court would rule, held that the NJCSS "requires that tort judgments be reduced by the amount of *any* recovery from other sources." *Id.* (emphasis added). This conclusion contradicted the holdings of prior intermediate court decisions, such as *Lusby* and *Woodger*, which received no attention in the opinion. Instead, the court relied on the New Jersey Supreme Court's decision in *Perreira v. Rediger*, 778 A.2d 429, 432 (N.J. 2001), which focused on a very different question: whether a health insurance company could recover funds from a tortfeasor pursuant to the NJCSS. *See* JA at 210–11. The *Perreira* court held that the NJCSS barred an insurance company's recovery because the statute aimed to shift the burden of payment from liability insurers to the health industry. *See* 778 A.2d at 436 (citing, *inter alia*, *Lusby*, 642 A.2d at 1061). However, as *Lusby* made clear, this statutory purpose is not served when a beneficiary shifts the burden of payment from a tortfeasor to the government. *See* 642 A.2d at 1061. Second, the *Early* court relied in large part on the Fifth Circuit's decision in *Thompson v. Goetzmann*, 337 F.3d 489, 500 (5th Cir. 2003), which held that the Medicare program could not be reimbursed from the proceeds of a tort settlement. *See* JA at 211. *Goetzmann*, however, relied on the Fifth Circuit's conclusion that tortfeasors were not a "primary plan" under the MSP Act—a conclusion that was abrogated by the 2003 amendments to the statute for the reasons we explained in Section III.A, *supra*.

Informed by the consistent line of Appellate Division decisions, and finding no persuasive rulings to the contrary,

we predict that the New Jersey Supreme Court would hold that Medicare payments, because of their conditional nature, do not constitute a collateral source of benefits under the NJCSS. Accordingly, Taransky may not rely on the NJCSS to avoid reimbursing the Government for Medicare payments it has made on her behalf.[10]

2

Taransky also argues that, regardless of our interpretation of the NJCSS, the Government must defer to the New Jersey Superior Court's apportionment order in accordance with Medicare's own regulations. Because the state court's order provides that no portion of the settlement recovery is attributable to medical expenses, Taransky claims that she has no obligation to pay.

Under the MSP Manual, "[t]he only situation in which Medicare recognizes allocations of liability payments to nonmedical losses is when payment is based on a court order *on the merits* of the case." MSP Manual, Ch. 7, § 50.4.4 (emphasis added). Further, "[i]f the court or other adjudicator of the merits specifically designate[s] amounts . . . not related to medical services, Medicare will accept the Court's designation." *Id.* In deference to the court's substantive decision, "Medicare does not seek recovery from portions of court awards that are designated as payment for losses other than medical services." *Id.*

---

[10] Because the NJCSS does not conflict with the MSP Act, the parties' arguments regarding whether the Act preempts the NJCSS are moot.

As the ALJ correctly found, the Superior Court's apportionment order was not "on the merits," and need not be recognized by the agency. A court order is "on the merits" when it is "delivered after the court has heard and evaluated the evidence and the parties' substantive arguments." Black's Law Dictionary 1199 (9th ed. 2009); *cf. Greene v. Palakovich*, 606 F.3d 85, 98 (3d Cir. 2010) (finding, in a criminal case, that "on the merits" means the state court "acted on the substance of [the] claim"), *aff'd sub nom. Greene v. Fisher*, 132 S. Ct. 38 (2011); *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009) (holding that state proceedings occur "on the merits" "when a state court has made a decision that 1) finally resolves the claim, and 2) resolves the claim on the basis of its substance"). Here, the state court did not adjudicate any substantive issue in the primary negligence suit. Indeed, in her motion for the order, Taransky clarified that she sought an apportionment not to resolve any outstanding issue in her suit, but "only to the extent necessary to obtain specified documentation relevant to anticipated administrative proceedings with the federal Centers for Medicare and Medicaid Services." JA at 267. The state court, in effect, rubber stamped her request. Taransky's motion was uncontested, issued pursuant to a stipulation between Taransky and Larchmont, and prepared and submitted by Taransky's counsel for the judge's signature. This order is the antithesis of one made on the merits.

Taransky counters with four arguments, none of which we find persuasive. First, she contends that the agency's definition of "on the merits" is improperly narrow because it ignores "'merits' determinations," such as dismissal and summary judgment orders, "that do not involve a trial to verdict." Taransky Br. at 23. But these orders involve an

adversarial exchange regarding the substance of a suit. By contrast, the allocation order in the present case was unopposed, the product of a prearranged agreement between Taransky and Larchmont. Taransky understandably wanted to maximize her recovery by excluding medical expenses from the settlement, and Larchmont, which had been insulated from further obligations pursuant to the terms of the settlement, was disinterested by that time.

Second, Taransky faults the Government for failing to contest her allocation motion, claiming that the Government cannot "rely on [its] own inaction as the sole basis for criticizing the court's ruling." Taransky Br. at 25. We find this argument unavailing because, while Taransky notified her Medicare contractor of the motion, she never made the Government a party to her suit. Furthermore, neither the MSP Act nor its implementing regulations require the Government to intervene in state proceedings where such post-settlement allocation motions are made.

Third, Taransky notes that the Medicare Appeals Council's treatment of the Superior Court's allocation order is inconsistent with previous determinations by QICs and ALJs[11] that have recognized the validity of almost identical orders. But the Appeals Council is free to depart from these lower agency rulings without concern, as only its decisions have legal significance. "Nowhere does any policy or regulation suggest that the [Appeals Council] owes any

---

[11] As indicated *supra* note 3, the QIC constitutes the second level of appeal in the Medicare administrative process. An unsatisfied claimant then proceeds to the ALJ, the third level of appeal.

deference at all to—much less is bound by—decisions of lower reviewing bodies addressing different disputes between different parties." *Almy v. Sebelius*, 679 F.3d 297, 310 (4th Cir. 2012). It is not arbitrary and capricious for the agency's highest body "to make final determinations that may [be] at odds with prior . . . decisions that did not carry the full imprimatur of the Secretary's authority." *Id.* at 311.

Taransky's fourth argument—her strongest—cites *Bradley v. Sebelius*, 621 F.3d 1330 (11th Cir. 2010), in which the Eleventh Circuit recognized a state court's post-settlement allocation order as a judgment "on the merits." *Id.* at 1339 n.22. In that case, the plaintiffs (the children of the decedent and the decedent's estate) challenged the Government's right under the MSP Act to recover medical costs from the proceeds of a liability settlement. *Id.* at 1330. In a demand letter, the decedent's children asserted claims for wrongful death against their father's nursing home, alleging abuse and neglect under state law; the decedent's estate separately sought damages for both wrongful death and medical costs. *Id.* at 1337 & n.13. The ensuing lump sum settlement of both suits was then apportioned between the children and the estate in a probate order. *Id.* at 1333–34.

The Eleventh Circuit held that the Medicare program could be reimbursed only from the amount of the settlement apportioned to the estate, as only the estate's claims included medical expenses. *Id.* at 1337. By contrast, the Government could not demand reimbursement from the children's settlement portion because their claims were distinct: they involved only "non-medical, tort property claims"—"a property right belonging to the child[, n]ot the Secretary." *Id.* The Eleventh Circuit determined that the Government could not disregard the probate order, as it was an "allocation based

on a court order." *Id.* at 1339 & n.22 (internal quotation marks omitted). In a footnote, it noted that there were adverse parties: "the estate and children on one hand, and the Secretary on the other." *Id.* at 1339 n.22. Similarly, the allocation decision was on the merits: "the merits of the Secretary's position versus the merits of those of the estate and children." *Id.*

While this language in *Bradley* supports Taransky's legal argument, we find that case factually distinguishable from this one. Here, Taransky was the sole claimant of the settlement funds. Unlike the decedent's children in *Bradley*, Taransky pursued medical expenses as part of her tort suit. In addition, her motion sought to allocate her settlement among the various elements of damages in her suit, and not, as in *Bradley*, to apportion a lump sum amount between separate suits brought by distinct parties. Thus, unlike in *Bradley*, the state court here did not adjudicate a substantive issue (*i.e.*, how funds should be divided between the parties before the court), and the Government here attempts only to be reimbursed from funds that were indisputably paid to a Medicare beneficiary.

For these reasons, we hold that the Medicare Appeals Council did not err in finding that the state court's order, which was entered upon a stipulation of the parties, did not constitute a court order on the merits of the case. Furthermore, given the substantial evidence supporting the Appeals Council's finding that Taransky's settlement included medical expenses, we conclude that she remains responsible for reimbursing the Government in spite of the Superior Court's allocation order.

IV

Having addressed Taransky's colorable arguments, we turn only briefly to her remaining claims, which we dismiss out of hand for lack of jurisdiction. Taransky argues that, even if she is liable for her medical expenses, the "equity and good conscience" exception in 42 U.S.C. § 1395gg(c) provides that the Government would be entitled not to full recovery of its payments, but only to a proportionate share of her recovery. Because Taransky never raised this argument before the agency, the District Court rightly held that it lacked jurisdiction to adjudicate it. *See* 42 U.S.C. §§ 405(g)–(h); *see Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 15 (2000) ("§ 405(g) contains the nonwaivable and nonexcusable requirement that an individual present a claim to the agency before raising it in court.").

Taransky responds that this argument need not be exhausted because she has not made a novel "'claim' for any benefits," but merely presented "an example of a judicially-endorsed method to resolve problems of equity and good conscience . . . —an issue specifically identified by [her] counsel in the administrative appeals process."[12] Taransky Br. at 37 n.10 (citation omitted). We disagree. During the administrative process, Taransky argued only that the

---

[12] Taransky makes this jurisdictional argument in a footnote, which is another reason why we refuse to consider it on the merits. *See John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived.").

Government could not recover its expenses *at all*—not that it erred in calculating the amount of its recovery.

Second, Taransky argues that the District Court had jurisdiction over her due process claim pursuant to 28 U.S.C. § 1331, as the claim arises from the U.S. Constitution, not the Medicare Act. She clarifies that she is not challenging the agency's adverse determination, but its actions "in implementing that administrative process"—specifically, that the agency "consistently ignore[s] the limitations of the [MSP Act], disregard[s] its own policies and procedures, and routinely exceed[s] [its] statutory authority by demanding repayment from beneficiaries without meeting the explicit statutory conditions required for reimbursement." Taransky Br. at 53.

The Medicare Act prevents courts from exercising jurisdiction under 28 U.S.C. § 1331 when a claim "arises under" the statute—a concept that has been read broadly by the Supreme Court. *See Heckler v. Ringer*, 466 U.S. 602, 614–15 (1984) (interpreting 42 U.S.C. §§ 1395ii and 405(h)). A constitutional claim "arises under" the MSP Act when the statute "provides both the standing and the substantive basis for the presentation of [the plaintiffs'] constitutional contentions." *Weinberger v. Salfi*, 422 U.S. 758, 760–61 (1975) (interpreting § 405(h) for the Social Security Act); *Heckler*, 466 U.S. at 615 (extending *Weinberger* to the Medicare Act).[13]

---

[13] A narrow exception to this general rule is when an agency provides "no review at all" for the claims at issue. *See Ill. Council*, 529 U.S. at 19 (describing the exception to § 405(h) created by *Bowen v. Michigan Academy of Family*

That is the case here. Taransky's constitutional claim is rooted in, and derived from, the Medicare Act. The premise of her constitutional claim—that the agency has "fail[ed] to follow the law controlling Medicare's reimbursement rights," Taransky Br. at 53—is an artful attempt to rephrase her primary argument, namely, that the agency has misinterpreted its right to reimbursement under the MSP Act. "To contend that such an action does not arise under the Act whose benefits are sought is to ignore both the language and the substance of the complaint and judgment." *Weinberger*, 422 U.S. at 761. Because Taransky's due process claim "arises from" the MSP Act, the District Court did not err in requiring her to exhaust the claim pursuant to 42 U.S.C. § 405(g) before seeking judicial review.[14]

---

*Physicians*, 476 U.S. 667 (1986)). The *Michigan Academy* exception does not apply here because administrative review of Taransky's due process claim was available under 42 U.S.C. § 405(g).

[14] Taransky's reliance on *Mathews v. Eldridge*, 424 U.S. 319 (1976), to establish federal question jurisdiction is also misplaced. That case does not, as Taransky contends, set forth a blanket rule exempting due process challenges from exhaustion. Rather, *Mathews* notes that the agency may be deemed to have waived the exhaustion requirement where the claimant's constitutional challenge (*i.e.*, entitlement to a pre-deprivation hearing) was collateral to his substantive entitlement claim, and exhaustion (*i.e.*, a post-deprivation hearing) rendered the constitutional argument futile. *Id.* at 330–31. Here, Taransky's due process claim is almost identical to her substantive argument, and there is no

V

       For the reasons stated, we hold that the MSP Act authorizes the Government to seek reimbursement from Taransky's settlement, as she has received funds from a primary plan under the statute that has a demonstrated responsibility for her medical expenses. Taransky can invoke neither the NJCSS nor the Superior Court's allocation order to avoid her reimbursement obligation, for the NJCSS did not prevent her from obtaining damages for medical expenses from Larchmont, and the Government need not recognize the allocation order because it was not on the merits. Finally, we hold that the District Court properly determined that it did not have jurisdiction over Taransky's unexhausted proportionate payment and due process claims. We will affirm the District Court's order dismissing Taransky's suit.

---

evidence that the agency cannot review the claim in the administrative process.